IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**WORK WHILE U-WAIT, INC.,**

    **Plaintiff,**

v.                                          CIVIL ACTION NO. 2:07-00266

**TELEASY CORPORATION,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the court are plaintiff's motion to dismiss defendant's counterclaim (Doc. No. 5), defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) (Doc. No. 7), and defendant's motion to dismiss for lack of personal jurisdiction (Doc. No. 8).  For the reasons set forth below, the court denies defendant's motion to dismiss for lack of personal jurisdiction; grants defendant's Rule 9(b) motion to dismiss, but allows plaintiff leave to amend; and grants plaintiff's motion to dismiss defendant's counterclaim.

### I.   Factual and Procedural Background

Plaintiff Work While u-Wait, Inc. ("Work While u-Wait"), is a West Virginia corporation located in Scott Depot, West Virginia.  (Doc. No. 1 at 5.)  Defendant TELeasy Corporation ("TELeasy") is incorporated in Delaware.  (Id. at 12.)  In January of 2005, plaintiff and defendant entered into a contract pursuant to which plaintiff was to purchase five public access internet terminals from defendant at a cost of $8,800.00 each,

for a total contract price of $44,000.00.  (Id. at 5-6.)
Plaintiff tendered payment for the total purchase price on
January 6, 2005.  (Id.)  Under the addendum to the purchase
order, the parties agreed that the terminals were to meet certain
specifications, including being "WiFi equipped" with an "upgraded
WiFi antenna," having a telephone modem, and displaying certain
custom graphics and logos.  (Id. at 17.)  The addendum further
provided that delivery to five designated locations in West
Virginia would be made within forty-five days from TELeasy's
receipt of payment and of the signed purchase order.  (Id.)  The
addendum continues, "TELeasy agrees to sell subsequent terminals,
of the same type, for $8000 per terminal, including delivery."
(Id.)

    Subsequently, the delivery date was moved back to April of
2005, due to configuration issues.  (Id. at 7.)  On April 28,
2005, Work While u-Wait received the first unit, which plaintiff
alleges failed to meet the agreed-upon specifications in several
respects.  (Id.)  Despite significant communication that ensued
between the parties, they were unable to resolve TELeasy's
alleged breach so as to complete performance under the contract.
(Id. at 7-8.)  On March 20, 2007, Work While u-Wait filed suit
against defendant in the Circuit Court of Putnam County, West
Virginia, alleging claims for breach of contract, fraud, breach
of warranty of fitness for a particular purpose, and conversion.

(Id. at 5-11.)  Plaintiff seeks various forms of relief, including damages in excess of three hundred thousand dollars. (Id. at 10.)

TELeasy removed the case to this court on May 1, 2007, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Id. at 1-2.)  On the same date, defendant filed its answer, along with a counterclaim asserting only an entitlement to attorney's fees and costs pursuant to a provision in the purchase order.[1]  (Doc. No. 2.)  Plaintiff subsequently filed a motion to dismiss defendant's counterclaim for failure to state a claim upon which relief may be granted.  (Doc. No. 5.)  Thereafter, TELeasy filed motions to dismiss for lack of personal jurisdiction (Doc. No. 8) and for failure to plead fraud with particularity (Doc. No. 7).  The parties' motions are ripe for adjudication.

## II.  Analysis

**A.   Motion to Dismiss for Lack of Personal Jurisdiction**

Plaintiff bears the burden of proving personal jurisdiction by a preponderance of the evidence.  Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).  Where, as here, a district court dispenses with an evidentiary hearing in deciding a pretrial personal jurisdiction

---

[1] Defendant has appeared specially in this action, "reserving all defenses for lack [of] jurisdiction."  (Doc. No. 2 at 1.)

motion, "the plaintiff need only make a prima facie showing of personal jurisdiction." Id. Moreover, all disputed facts and reasonable inferences must be resolved in favor of the plaintiff at this stage. Id.

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), "a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." Diamond Healthcare of Ohio, Inc., v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000). Two conditions must be satisfied for personal jurisdiction to exist. Carefirst, 334 F.3d at 396. First, the forum state's long-arm statute must provide a basis for jurisdiction. Id. Second, the exercise of jurisdiction must be consistent with the Fourteenth Amendment's due process requirements. Id. West Virginia's long-arm statute, West Virginia Code Section 56-3-33, is "coextensive with the full reach of due process."[2] Owens-Illinois, Inc. v. Rapid Am. Corp.

---

[2] West Virginia Code Section 56-3-33 reads in pertinent part as follows:

(a) The engaging by a nonresident . . . in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the Secretary of State, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state . . . for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and

(In re Celotex Corp.), 124 F.3d 619, 627 (4th Cir. 1997). Accordingly, the two steps in the court's analysis merge, and the inquiry centers on whether the requirements of due process permit the exercise of personal jurisdiction over TELeasy. Id. at 627-28.

Due process mandates that a defendant have sufficient minimum contacts with the forum state such that requiring him to defend his interests there would not "offend traditional notions of fair play and substantial justice."[3]  Int'l Shoe Co. v.

---

validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
. . .
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: Provided, That he . . . derives substantial revenue from goods used or consumed or services rendered in this state . . . .

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her.

[3]  Where a nonresident defendant has made continuous and systematic contacts with the forum state, a court may exert general personal jurisdiction over him without regard to the contacts surrounding the transaction in question. Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000). "In the absence of continuous and systematic contacts, a court may still exercise *specific* personal jurisdiction when the contacts relate to the cause of action and

Washington, 326 U.S. 310, 316 (1945).  Where the defendant has "'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities," the defendant will be deemed to have had "fair warning" that his activities may subject him to suit in that jurisdiction.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  The critical consideration in this respect is whether "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"  Id. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)).  It is the activity of the nonresident defendant, rather than that of the resident plaintiff, that is to be examined.  Burger King, 471 U.S. at 474.  "'[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  Id. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

On this issue, the Burger King case provides further guidance:

---

create a substantial connection with the forum state."  Id.
Because sufficient contacts exist to establish specific personal
jurisdiction over TELeasy, the court will not consider whether
general jurisdiction has been proven.

> [W]here the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Burger King, 471 U.S. at 475-76 (internal citations omitted).

Although a foreign defendant's contract with a resident plaintiff will not automatically establish the minimum contacts necessary to justify personal jurisdiction, the circumstances surrounding the contract may do so. Id. at 478-79. Courts recognize that contracts are generally the coalescence of prior negotiations with future consequences; these factors, "along with the terms of the contract and the parties' actual course of dealing," may supply the requisite contacts. Id. Provided the nonresident defendant's actions are intentionally directed toward a resident of the forum state, it is unnecessary that the defendant have any physical contact with the state. Id. at 476. Furthermore, the place of execution and of performance of the contract are not dispositive. Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316 (1943).

The minimum contacts analysis is not to be conducted mechanically, but rather on a case-by-case basis. Chung v. NANA Dev. Corp., 783 F.2d 1124, 1129 (4th Cir. 1986). Consequently, in cases involving a single shipment of goods into a forum state,

the Fourth Circuit has found personal jurisdiction in some instances and not in others.  Id.  In Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4th Cir. 1956), for example, the Court found no personal jurisdiction over a New York defendant who had contracted to sell a quantity of yarn to a North Carolina plaintiff.  The parties in Erlanger had entered into the contract at the defendant's place of business in New York, and had agreed that the goods would be shipped to North Carolina.  Id. at 504.  When the plaintiff received the defective yarn, several communications ensued, after which the defendant's general manager traveled to North Carolina to discuss the problem.  Id.  On these facts the Court affirmed the district court's dismissal for want of jurisdiction.  Id. at 509.

The court reached the opposite conclusion in Ajax Realty Corp. v. J.F. Zook, Inc., 493 F.2d 818 (4th Cir. 1972).  In Ajax, the nonresident defendant was a manufacturer of window frames located in Washington State and doing business only in the Pacific Northwest.  Id. at 819-20.  It sold a number of window frames to a Colorado company, which in turn sold them to the plaintiff, a Virginia corporation.  Id.  Although it was not involved in the second sales transaction, the manufacturer complied with the Colorado company's request that the frames be shipped directly to the plaintiff in Virginia.  Id. at 820.  When the frames leaked, the manufacturer sent a representative to

Virginia to address the issue.  Id.  In concluding that the manufacturer's contacts with Virginia sufficed to establish jurisdiction, the court relied upon the manufacturer's direct shipment of the frames to Virginia, as well as the "substantial revenue" it received through the transaction.  Id. at 821.

The Fourth Circuit took a different course in Chung, in which a Virginia plaintiff contracted with an Alaskan company for the purchase of a large quantity of reindeer antlers.  Chung, 783 F.2d at 1125.  After several communications between the parties, the Alaskan company agreed to sell the plaintiff five hundred pounds of antlers for a total sum of $17,500.00, but insisted that he take possession of them in Nome, Alaska.  Id.  Upon plaintiff's arrival in Alaska, where the sale was consummated, only one hundred twenty pounds of antlers had been prepared for him.  Id. at 1125-26.  Because the plaintiff was unable to wait for the remainder to be prepared, the Alaskan company agreed to ship the balance of the order to the plaintiff in Virginia.  Id. at 1126.

Analyzing the case under the Burger King factors set forth above, the Court concluded that a suit in Virginia would not have been foreseeable to the Alaskan defendant.  Id. at 1127-28.  In so deciding, it emphasized that the transaction arose purely out of the plaintiff's unilateral inquiries, and that the defendant had agreed to ship the antlers to Virginia only at the last

moment for the convenience of the plaintiff, and only on "this isolated occasion." Id. at 1128. Because the contract in question had no "'substantial connection'" with the forum state, personal jurisdiction over the Alaskan defendant in Virginia was not permissible. Id. (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

The instant case presents a substantially different set of circumstances. Although it appears that the parties' relationship began with a unilateral inquiry on the part of Work While u-Wait, TELeasy – unlike the defendant in Chung – did not distance itself from the forum state. It readily agreed to ship the computer terminals to five West Virginia locations. (Doc. No. 1 at 17.) It engaged in ongoing communications with Work While u-Wait both before and after the shipment of the first terminal in April of 2005, and is alleged to have accessed the terminal remotely following its delivery in West Virginia in an attempt to resolve the problems of which plaintiff complained. (Id. at 7.) The fact that representatives of TELeasy never traveled to West Virginia in connection with this transaction is not of great significance; as noted above, physical contact with the forum state is not necessary where the defendant's actions were intentionally directed toward the resident plaintiff. Burger King, 471 U.S. at 476.

It is worth noting that the warranty provisions of the purchase order contemplate future contact between the parties in the event that certain replacements or repairs are necessary. (Doc. No. 1 at 15.)  Most persuasive, however, is that the transaction in question was clearly entered into in contemplation of future transactions between the parties.  The addendum to the purchase order, signed by representatives of both parties, states explicitly that TELeasy agrees to sell Work While u-Wait additional, subsequent terminals for $8,000.00 each.  (Id. at 17.)  In post-delivery communications between the parties, both plaintiff and defendant refer to expected future transactions that apparently were taken into consideration in negotiating the instant transaction.  (Doc. No. 13 Ex. A at 4 ("We are confident that you will place orders for all the 60 units that were under discussion at the time of negotiating our initial order."); Id. at 6 ("We anxiously anticipate your next order."); Id. at 9 ("Current plans call for the purchase of at least 60 additional kiosks in the next 24 months . . . .").)

Considering the terms of the contract and the parties' course of dealing, it is evident that TELeasy acted with an awareness that it would bear certain continuing obligations as a result of its relationship with this West Virginia company.  As such, TELeasy certainly should have foreseen the possibility of legal action in this state.  Plaintiff has, therefore,

established the minimum contacts necessary to sustain personal jurisdiction over the defendant.

Because these contacts "must be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice,'" the court must next consider the reasonableness and fairness of requiring TELeasy to defend its interests in West Virginia. Volkswagen, 444 U.S. at 292 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

> Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

Volkswagen, 444 U.S. at 292 (internal citations omitted).

A forum state will generally have a "manifest interest" in providing a convenient avenue for litigation between one of its residents and a nonresident party alleged to have caused injury to the resident. Burger King, 471 U.S. at 473. "Moreover, where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities . . . ." Id. at 474 (quoting Kulko v. California Superior Court, 436 U.S. 84, 96 (1978)).

Furthermore, the modernization of transportation and communication that has fueled interstate commerce has also "made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."  McGee, 355 U.S. at 222-223.

TELeasy contends that plaintiff would have an unfair "home-field advantage" if permitted to litigate in this forum, due in part to the financial burden to the defendant if required to defend itself in West Virginia.  (Doc. No. 9 at 3-4.)  Defendant explains that its evidence and witnesses are located outside the state, with some witnesses located in Florida, New York, and Texas.  (Id. at 4.)  If that be the case, however, many of defendant's witnesses will be required to travel regardless of the forum in which this action proceeds.  Similarly unavailing is TELeasy's assertion of hardship due to the New York choice-of-law provision in the purchase order.[4]  (See id.; Doc. No. 1 at 13.)  Assuming for the sake of argument that the provision is valid, the application of New York law by attorneys licensed outside that state would be necessary in any forum, because New York lacks jurisdiction over this suit.

Plaintiff has established the requisite contacts for this court's exercise of personal jurisdiction over TELeasy.  Because

---

[4] The court notes that the provision relates only to the law to be applied in interpreting the contract, and is not a forum selection clause.  (Doc. No. 1 at 13.)

-13-

such jurisdiction comports with the requirements of due process, the defendant's motion to dismiss for lack of personal jurisdiction is denied.

**B.   Motion to Dismiss for Failure to Plead with Particularity**

Count Two of plaintiff's complaint asserts a cause of action for fraud. (Doc. No. 1 at 8.) After incorporating the allegations set forth in the foregoing paragraphs, Count Two continues as follows:

> 16. Upon information and belief, TELeasy intentionally made untrue representations to Work While u-Wait that it could provide Work While u-Wait the five internet terminals as specified in the January 6, 2005 purchase agreement.
>
> 17. Work While u-Wait believed the untrue representations made by TELeasy and relied upon them when entering into the January 6, 2005 purchase agreement with TELeasy.
>
> 18. Upon information and belief, Work While u-Wait believes that TELeasy intended not to provide five operable internet terminals, but to defraud Work While u-Wait out of the money it paid to TELeasy. As a result of relying upon and acting upon the untrue representation of TELeasy, Work While u-Wait has suffered monetary loss.

(Id.)

With regard to allegations of fraud, Federal Rule of Civil Procedure 9(b) mandates that the circumstances constituting fraud be stated with particularity. Fed. R. Civ. P. 9(b). In arguing what level of specificity is necessary to satisfy this requirement, defendant, citing the choice-of-law provision mentioned above, relies on the law of New York State. (Doc. No.

-14-

7 at 2.) That provision states that the purchase order agreement "shall be governed by and construed in accordance with the laws of the State of New York." (Doc. No. 1 at 13.)

Nevertheless, the court may not automatically apply New York law without question. Rather, "[a] federal court sitting in diversity must apply the forum state's choice-of-law rules." In re Nantahala Village, Inc., 976 F.2d 876, 880-81 (4th Cir. 1992)(citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). In West Virginia, a court will not apply a choice-of-law provision in a contract if the chosen state has no substantial relationship to the contract or to the parties. Gen. Elec. Co. v. Keyser, 275 S.E.2d 289, 293 (W. Va. 1981). From the facts before the court, it appears doubtful that such a relationship exists in this case. Plaintiff is a West Virginia corporation, defendant is incorporated in Delaware, and the TELeasy sales representative who dealt with plaintiff is located in Florida. (See Doc. No. 9 at 4.) The only apparent connection this transaction has to New York is that some of defendant's production staff are located there. (Id.)

Whether this fact alone is sufficient to justify application of New York law, the court need not decide. The choice-of-law provision in question is of such narrow scope as to be inapplicable to plaintiff's fraud claim. It does not purport to govern all disputes arising under the contract or between the

parties; the provision merely states that the agreement, itself, is to be "governed by and construed in accordance with" New York law.  (Doc. No. 1 at 13.)  Because the allegations contained in Count Two are in the nature of a claim for fraud in the inducement – a claim that sounds in tort – there is no basis on which to apply New York law to the court's Rule 9(b) analysis.  See FDIC Corp. v. British-American Corp., 755 F. Supp. 1314, 1325 (E.D.N.C. 1991)("A contractual choice-of-law provision selecting the law to govern the construction or interpretation of the contract has no impact on the law which governs claims unrelated to the construction or interpretation of the contract.")(citing Glaesner v. Beck/Arnley Corp., 790 F.2d 384, 386 n.1 (4th Cir. 1986); ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 50 n.11 (4th Cir. 1983)).

Under Rule 9(b), the circumstances constituting fraud that are required to be pled with particularity include "'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)(quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)).  Conclusory allegations of the sort made by plaintiff will not satisfy this particularity requirement.  See Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir.

1989); Cooper v. Blue Cross & Blue Shield, 19 F.3d 562, 568-69 (11th Cir. 1994).

In opposing defendant's motion to dismiss, plaintiff relies extensively on matters outside the complaint, including an affidavit attached to its response.  (Doc. No. 11 Ex. 1.)  Such materials are irrelevant, as it is the allegations contained in the complaint that must meet Rule 9(b)'s pleading standard.  See Miller v. Gain Fin., Inc., 995 F.2d 706, 709 (7th Cir. 1993) (affidavits are incapable of rectifying lack of particularity in complaint).

Because plaintiff's general allegations of fraud are inadequate under the particularity requirement of Rule 9(b), the court grants defendant's motion to dismiss.  Plaintiff has requested permission to amend its complaint.  (Doc. No. 11 at 8.) Federal Rule of Civil Procedure 15(a) mandates that leave to amend a pleading "be freely given when justice so requires." Fed. R. Civ. P. 15(a); see also 2-9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 9.03 (2d ed. 1990).  Accordingly, plaintiff shall have fourteen business days from the entry of this Memorandum Opinion and Order to file an amended complaint sufficient to withstand an attack under Rule 9(b).

**C.     Motion to Dismiss Defendant's Counterclaim**

Finally, plaintiff has filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss defendant's counterclaim, through which defendant seeks attorney's fees and costs.  (Doc. No. 5.)  Defendant's counterclaim states simply that the parties' contract contains "a provision entitling the Defendant to its attorneys fees and costs in this matter," and that defendant "demands payment therefore under a theory of contractual indemnity."  (Doc. No. 2 at 7.)  Defendant did not respond to plaintiff's motion to dismiss.

The contractual provision to which defendant's counterclaim refers states that "[t]he prevailing party in any action or arbitration relating in any manner" to the parties' agreement shall be entitled to collect its attorney's fees and costs from the losing party.  (Doc. No. 1 at 13 (emphasis added).)  As plaintiff observes, this provision does not entitle defendant to collect its fees and costs no matter the outcome of the litigation, as the counterclaim suggests.  Moreover, defendant's assertion that it is entitled to fees and costs, in the absence of any further allegations of wrongdoing on plaintiff's part, simply does not amount to a cause of action.  Accordingly, dismissal under Rule 12(b)(6) is appropriate.

### III. Conclusion

Having determined that personal jurisdiction over defendant TELeasy is justified, the court hereby **DENIES** defendant's motion to dismiss for lack of personal jurisdiction. (Doc. No. 8.) Because plaintiff has failed to plead its fraud claim (Count Two) with particularity, the court **GRANTS** defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b). (Doc. No. 7.) The court further allows plaintiff fourteen business days from the entry of this Memorandum Opinion and Order to file an amended complaint. Finally, the court **GRANTS** plaintiff's motion to dismiss defendant's counterclaim. (Doc. No. 5.)

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

It is **SO ORDERED** this 24th day of October, 2007.

ENTER:

*David A. Faber*

David A. Faber
United States District Judge